**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

*In re* **H.C.**

**No. 24-409** (Preston County CC-39-2019-JA-3)

**MEMORANDUM DECISION**

Petitioner Mother H.D.[1] appeals the Circuit Court of Preston County's June 18, 2024, order denying her motion to modify a prior disposition, arguing that the circuit court erred by refusing to grant enforceable visitation with H.C. and by denying her request for a post-dispositional improvement period.[2] Upon our review, we determine that oral argument is unnecessary and that a memorandum decision affirming, in part, and vacating, in part, the circuit court's June 18, 2024, order and remanding for further proceedings is appropriate, in accordance with the "limited circumstances" requirement of Rule 21(d) of the West Virginia Rules of Appellate Procedure.

The proceedings giving rise to this appeal began in January 2019 when the DHS filed a petition[3] alleging that the petitioner abused and neglected the child by abusing controlled substances, exposing the child to domestic violence, and failing to provide for the child's basic needs due to the petitioner's incarceration. The circuit court adjudicated the petitioner as an abusing and neglecting parent after she stipulated to the allegations against her. At a dispositional hearing in April 2019, the court imposed disposition under West Virginia Code § 49-4-604(c)(5)[4]

---

[1] The petitioner appears by counsel Jeremy B. Cooper. The West Virginia Department of Human Services appears by counsel Attorney General John B. McCuskey and Assistant Attorney General Lee Niezgoda. Because a new Attorney General took office while this appeal was pending, his name has been substituted as counsel. Counsel Clarissa M. Banks appears as the child's guardian ad litem.

Additionally, pursuant to West Virginia Code § 5F-2-1a, the agency formerly known as the West Virginia Department of Health and Human Resources was terminated. It is now three separate agencies—the Department of Health Facilities, the Department of Health, and the Department of Human Services. *See* W. Va. Code § 5F-1-2. For purposes of abuse and neglect appeals, the agency is now the Department of Human Services ("DHS").

[2] We use initials where necessary to protect the identities of those involved in this case. *See* W. Va. R. App. P. 40(e).

[3] The proceedings below included children and adult respondents who are not at issue on appeal.

[4] West Virginia Code § 49-4-604(c)(5) provides, in relevant part, that a court may,

1

at the parties' request to allow the child to be eligible for a subsidized legal guardianship with her current placement.[5] The dispositional order was silent as to whether the petitioner could have continued contact with the child. However, in a subsequent order granting permanent legal guardianship of the child to the guardians, the court ordered that contact between the child and the petitioner was at the guardians' discretion.

Two years later, in April 2021, the petitioner was released from incarceration and filed a motion for visitation with the child, and the child's therapist began facilitating visits between the child and the petitioner as appropriate. In March 2022, the petitioner filed a motion for modification of the dispositional order pursuant to West Virginia Code § 49-4-606(a)[6] arguing that her release from incarceration constituted a material change in circumstances that warranted reunification with the child and requesting a post-dispositional improvement period.

The court held multiple evidentiary hearings between March 2022 and November 2023 on the petitioner's motions for modification and visitation, during which the court heard testimony from the child's therapist and admitted her therapy notes and reports as evidence. The therapist testified that the petitioner was cooperative during visits and participated in family therapy sessions, but the child was reluctant to attend visits with the petitioner, regressed after visits with her, stated that she wanted no contact with her, and consistently expressed her desire to remain with her guardians. She explained that, despite years of therapy, the child was unable to process the trauma that she experienced while in the petitioner's care and was "emotionally conflicted and noticeably triggered regarding [her] trauma of Domestic Violence and chaos." The therapist opined that the then-eight-year-old child had the intellectual capacity and maturity to understand and make decisions concerning her custody. Further, the therapist's records indicated that the child experienced "increased anxiety, moodiness and crying, oppositional/defiant with verbal aggression [with a sibling] and also with others while awaiting the time for the visit." The petitioner introduced evidence demonstrating that she was compliant with the terms of her probation, consistently tested negative for drugs, maintained employment, fixed up her home, and

---

[u]pon a finding that the abusing parent or battered parent or parents are presently unwilling or unable to provide adequately for the child's needs, commit the child temporarily to the care, custody, and control of the department, a licensed private child welfare agency, or a suitable person who may be appointed guardian by the court.

[5] The child's father signed a waiver of guardianship.

[6] West Virginia Code § 49-4-606(a) provides, in relevant part, that

[u]pon motion of a child, a child's parent or custodian or the department alleging a change of circumstances requiring a different disposition, the court shall conduct a hearing pursuant to section six hundred four of this article and may modify a dispositional order if the court finds by clear and convincing evidence a material change of circumstances and that the modification is in the child's best interests.

2

stopped engaging in domestic violence. Finally, the court conducted three in camera interviews with the child over the course of the hearings, during which the child recounted her fears from living with the petitioner, explained that visiting her old home gave her nightmares and made her angry, stated that she did not want to see or hear from the petitioner except as necessary to see her sister, and maintained her desire to remain with the guardians. In January 2024, the petitioner filed a renewed motion for modification of the dispositional order, a renewed motion for visitation, and a motion for sibling visitation.

On June 18, 2024, the court entered an order denying the petitioner's motion to modify and granting her motion for visitation. The court acknowledged that the petitioner had experienced a material change in circumstances given that she was released from incarceration and was compliant with the terms of her probation. However, the court found that the child "had experienced severe emotional and psychological trauma while she was living with [the petitioner] . . . because of [the petitioner's] conduct and actions while engaging in criminal activity." The court explained that the child "still suffers from this trauma and ha[d] clearly expressed her concerns and wishes to the Court." As such, the court found that modification of the prior disposition to reunify the petitioner with the child was not in the child's best interest. Nevertheless, the court granted the petitioner's motion for visitation and ordered that such visitation was to occur at the child's discretion if she "desire[d] to have contact and visitation." The court also ordered sibling visitation between the child and one sibling but denied visitation between the child and a second sibling unless the child "desire[d] to have visitation." It is from this order that the petitioner appeals.[7]

On appeal from a final order in an abuse and neglect proceeding, this Court reviews the circuit court's findings of fact for clear error and its conclusions of law de novo. Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011). Before this Court, the petitioner first argues that the circuit court erred by "declining to grant any enforceable visitation between H.C. and the petitioner." Upon our review, we agree with the petitioner that the circuit court erred by granting visitation between the child and the petitioner without formulating a visitation plan. *See In re H.M.*, 251 W. Va. 333, --, 912 S.E.2d 885, 893 (2025) (explaining that "a proper visitation plan must be formulated where visitation is found appropriate" (quoting *In re K.S.*, 246 W. Va. 517, 531, 874 S.E.2d 319, 333 (2022))). But, as an initial matter, we note that the court also failed to make the requisite findings to grant such continued association. Recently, in *In re H.M.*, we explained that "[w]hen parental rights remain intact, but the child is not returned to the parent(s)' custody, continued visitation may still be granted because '[a] child has a right to continued association with individuals with whom [s]he has formed a close emotional bond . . . provided that a determination is made that such continued contact is in the best interests of the child.'" 251 W. Va. at --, 912 S.E.2d at 892-93 (second alteration in original) (quoting Syl. Pt. 11, in part, *In re Jonathan G.*, 198 W. Va. 716, 482 S.E.2d 893 (1996)). It is important to remember that

> [t]he guiding principle relied upon by this Court in recommending consideration of continued contact with a child is whether a strong emotional bond exists between the child and an individual *such that cessation in contact might be harmful to the*

---

[7] The permanency plan for the child is to remain in her current legal guardianship.

3

*child*, both in its transitory period of adjusting to a new custodial arrangement and in its long-term emotional development.

*In re Jonathan G.*, 198 W. Va. at 735, 482 S.E.2d at 912 (emphasis added); *see also Honaker v. Burnside*, 182 W. Va. 448, 452, 388 S.E.2d 322, 325 (1989) ("Visitation . . . is aimed at fulfilling what many conceive to be a vital, or at least a wholesome contribution to the child's emotional well being by permitting partial continuation of an earlier established close relationship." (quoting *Looper v. McManus*, 581 P.2d 487, 488 (Okla. Civ. App. 1978))). In that vein, a child's right to continued association with significant persons in his or her life is a right "of the child and not of the parent." *Honaker*, 182 W. Va. at 452, 388 S.E.2d at 325.

Here, the court made factual findings detailing the child's extensive trauma caused by the petitioner and observing the child's steadfast assertion that she did not want contact with the petitioner. Furthermore, the record indicates that the child did not have a close emotional bond with the petitioner such that continued association was vital to her well-being. More concerning, however, is the fact that the child's visits with the petitioner clearly caused her to suffer emotional and mental distress to the extent that she experienced skill regression and interpersonal conflicts. Despite this, the court granted the petitioner visitation, albeit at the child's discretion, without any analysis explaining how such contact was in the child's best interest. Therefore, we must vacate the provisions of the circuit court's June 18, 2024, order granting the child visitation with the petitioner, and the matter must be remanded for the court to determine whether continued association between the child and the petitioner is in the child's best interests. *See Honaker*, 182 W. Va. at 452, 388 S.E.2d at 325 ("Undoubtedly, [the child's] best interests must be the primary standard by which we determine her rights to continued contact with other significant figures in her life.").[8] On remand, if the court determines that continued association with the petitioner is in the child's best interests, then the court must also formulate a visitation plan outlining when such visits may occur.

Finally, the petitioner argues that the court abused its discretion by denying her a post-dispositional improvement period because she met the statutory requirements. *See* W. Va. Code § 49-4-610(3) (permitting a court to grant a post-dispositional improvement period when a parent "moves in writing for the improvement period . . . [and] demonstrates, by clear and convincing evidence, that [she] is likely to fully participate in the improvement period"). We find no merit to this argument, however, because the circuit court found that modification of the dispositional order was not in the child's best interest—a finding the petitioner does not challenge on appeal—and properly denied the petitioner's motion to modify. *See* W. Va. Code § 49-4-606(a) (permitting circuit courts to modify a dispositional order upon a parent's motion "if the court finds by clear and convincing evidence a material change of circumstances and that the modification is in the child's best interests"). Therefore, the petitioner is entitled to no relief in this regard.

For the foregoing reasons, we vacate, in part, the circuit court's June 18, 2024, order insofar as it relates to visitation with the petitioner; and we remand this matter to the circuit court for

---

[8] We note that the guardian ad litem did not appeal those portions of the circuit court's June 18, 2024, order relating to sibling visitation.

further proceedings, including but not limited to, the entry of an order determining whether it is in the child's best interests to have continued association with the petitioner and formulating a visitation plan if visitation is granted.[9] As to that portion of the circuit court's order denying the petitioner's motion for modification, we find no error and affirm. The Clerk is hereby directed to issue the mandate contemporaneously herewith.

Affirmed, in part, vacated, in part, and remanded, with directions.

**ISSUED**: September 16, 2025

**CONCURRED IN BY**:

Chief Justice William R. Wooton
Justice C. Haley Bunn
Justice Charles S. Trump IV
Justice Thomas H. Ewing
Senior Status Justice John A. Hutchison

---

[9] The vacation of this order applies only to the petitioner. Accordingly, the portions of the orders concerning other children and adult respondents remain in full force and effect.